CHARLES B. CASE, receiver,

*v.*

WILLIAM McGILL et al.

[Decided April 8th, 1905.]

1. Where, in pursuance of its agreement with a contractor, a brick company furnished him, in his own name and on his own credit, all the brick necessary for the performance of a street paving contract with a city, the fact that, after learning of a partnership formed by him subsequent to such agreement, it furnished him, for the fulfillment of the contract, with a quantity of brick representing in money the unpaid balance due it, does not make the moneys owing by the city to the contractor partnership assets as against the brick company.

2. The brick company, by securing judgment against the contractor, for the brick furnished, and the execution being returned unsatisfied, by filing a bill setting forth such facts and the indebtedness of the city to the contractor, and praying for discovery of the amount due and the application of the same to the payment of its judgment, secured an equitable lien on the moneys due from the city which is prior to any claims of members of the partnership or of the receiver of the firm or its creditors.

On bill. On final hearing.

*Mr. John H. Backes,* for the complainant.

*Mr. William J. Walsh,* for William McGill.

*Mr. Erwin E. Marshall, Mr. John Sykes* and *Mr. John T. Bird,* for the Trenton Fire Brick Company.

BERGEN, V. C.

September 14th, 1903, Timothy Ryan entered into a contract with the city of Trenton for the paving of certain streets, and on the 2d of November following a copartnership was formed, the terms of which were reduced to writing, between Ryan and Charles D. Ginder, for the fulfillment of this contract.

The work has been completed, and as the partnership was
limited to this particular work the active part of it is at an
end. The present proceedings relate to the distribution of the
unpaid portion of the money due thereon from the city, which
is represented by two city warrants, directed to the city treas-
urer for the payment of $1,885.98 and $518.79, respectively,
issued to and held by the complainant as receiver of the copart-
nership, and by two other warrants issued to Timothy Ryan,
and by him endorsed to and now held by the defendant McGill
for $1,000 each. The complainant was appointed receiver of
the copartnership of Ryan and Ginder under proceedings insti-
tuted for that purpose in this court, on November 2d, 1903,
and as such has filed his bill in this cause to establish his right
to the moneys due from the city, insisting that it is firm prop-
erty, and should be first applied toward the payment of the part-
nership debts. The defendant, the Trenton Fire Brick Com-
pany, has answered and claims an equitable lien upon the funds
to the extent of about $1,200, prior to the rights of the part-
nership creditors, and to sustain its claim shows, that previous
to the bidding for the contract, Ryan had applied to it for a
price at which it would agree to furnish all the brick necessary
to perform the contract if awarded to him; that Ryan, being
the successful bidder, notified them that he accepted their
proposition, and under this agreement the brick company fur-
nished all the bricks required to complete the contract; that
all of the goods were furnished to Ryan in his name and on his
credit, and that it had no knowledge of any partnership between
Ryan and Ginder. I am satisfied from the evidence, and so
find, that so far as the brick company is concerned it had no
knowledge of the partnership, and that as to it Ginder was a
dormant partner. Nor does it appear that this partnership was
acknowledged or disclosed to anyone, at least not until long after
it was formed. The city warrants were all issued payable to the
order of Ryan and by him in most, if not all instances, endorsed
to the brick company, it returning to him by check drawn to
his order the difference between the account he owed it at the
time and the amount of the warrants, all of which was within
the knowledge of Ginder, the partner, who took no steps to

correct the impression entertained and acted upon by the brick company that Ryan was carrying on the work on his own account. There is some proof that about May 1st, 1904, the officers of the brick company had knowledge of this partnership, and it was urged on the argument that, as that company had furnished to Ryan after that date a sufficient quantity of brick to represent in money the balance due them, it should be charged with having furnished them with knowledge of the partnership. But this claim is sufficiently disposed of by the fact that the brick company had entered into an agreement with Ryan to furnish the whole quantity required, and it was bound to complete its contract with him. On August 23d, 1904, the brick company recovered a judgment against Ryan in the supreme court of this state for $1,244.69 damages and costs, and the execution issued thereon having been returned unsatisfied for want of property to be levied on, the brick company, on October 25th, 1904, filed its bill of complaint in this court, setting forth the facts above stated, and also that the city of Trenton was indebted to Ryan in a large amount for the performance of said contract, and thereupon prayed for a discovery of the amount due, and the application of so much of the money due by the city to Ryan as might be necessary for that purpose towards the payment of their judgment. These proceedings established an equitable lien in favor of the brick company upon the money in the hands of the city belonging to Ryan. *Taylor* v. *Taylor, 59 N. J. Eq. (14 Dick.) 86.* The complainant, however, insists that as Ryan and Ginder were partners, the money due belonged to the firm and must first be applied to the satisfaction of the partnership debts, and that, as it was not the property of Ryan, no equitable lien could attach. This claim, in my judgment, is not well founded, for it would be most inequitable, after it had made its agreement with Ryan and fulfilled it, giving credit to him as an individual upon the strength of this very contract with the city from the proceeds of which they expected him to pay it, to now deprive the brick company of the benefit of a right which it had a right to rely upon.

It is undoubtedly true that where the partnership is an open one the creditors of a partnership have a right to be paid first

out of the partnership property in preference to those of the individual partners; but a different rule prevails when the partnership is a silent one, and the business is conducted in the individual name of one of the partners. As was well said by. Chancellor Pennington in *Cammack* v. *Johnson et al., 2 N. J. Eq. (1 Gr.) 163, 169*, "After dealing with a man under the idea that he was carrying on business on his own account, and prosecuting demands to judgment and execution, if a secret partner may then, for the first, announce the fact of his being a member of the firm, and claim all the rights of an open partner, there would be no security in trade,  *   *  .*  and a creditor may, at his election, sue either the visible partner alone or join any latent partner he may discover."

It therefore follows, under the circumstances of this case, that the brick company having recovered its judgment and filed its bill, obtained an equitable lien as a reward for its diligence upon the money due from the city, which lien is prior to any claim of the members of the partnership, their representative, the receiver, or the creditors of the partnership, for claims, none of which, so far as this case shows, have been reduced to judgments, and I will advise that it is first entitled to be paid out of the moneys due from the city the amount due to it on its judgment, together with its costs of this suit.

There yet remains to be disposed of the question between the receiver and the defendant McGill. It appears that in July, 1904, Ryan obtained from the city two warrants for $1,000 each payable to his order; that he endorsed these warrants to the defendant McGill, who testifies that he bought the warrants from Ryan at a discount of $150, but he admits that he was only to pay for them at his convenience, and has paid but $877.10. I am not disposed to credit the story of McGill that he really purchased these warrants, nor is it sustained by the evidence. It is not reasonable to suppose that Ryan, being so greatly in need of money as to sacrifice by way of discount $150, actually sold these warrants upon any such terms of payment as McGill testifies to. However that may be, he yet owes to Ryan the difference between the amount he has advanced and the amount due from the city as represented by these warrants, without al-

lowance for the alleged discount. As between the partners, Ryan and Ginder, this money is partnership funds, and the attempt of Ryan to place the amount due beyond the reach of the partnership creditors, or to waste it by allowing unusual discounts by this pretended sale, cannot be sustained. While some question has been raised as to the actual amount advanced by McGill, I think the evidence justifies me in finding that he paid on account of these warrants and advanced to Ryan on their security different sums which amount to $877.10, and he will be decreed to deliver to the complainant as receiver, with such assignment as may be required to transfer the title, the two warrants, upon being paid by the receiver $877.10 with interest from the date of the respective payments by him to Ryan, and if the amount cannot be agreed upon when the decree is presented I will fix it.